IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) Case No. 05-50219-JAD |
| | ) |
| **Mon View Mining Company,** | ) Chapter 11 |
|     Debtor, | ) |
| | ) Document No. |
| **Mon View Mining Company,** | ) |
|     Movant, | ) |
| | ) |
|     vs. | ) |
| **Canestrale Environmental Control Corporation; Sanderling Incorporated; Washington County; Commonwealth of Pennsylvania, Department of Environmental Protection; Ringgold School District; Washington County Tax Claim Bureau; Carroll Township, New Eagle Nottingham Township, North Strabane Township, Union Township, United States of American, Department of Treasury, The Internal Revenue Service; Anixter, Inc.; The Commonwealth of Pennsylvania, Department of Revenue; The Commonwealth Of Pennsylvania, Department of Labor; Union, Matthews Leasing and Slane Energy, LLC,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
|     Respondents. | ) |

## MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES AND CLAIMS

**AND NOW,** comes the Debtor, Mon View Mining Company, by and through its attorneys, Donald R. Calaiaro and Calaiaro & Corbett, P.C., and presents the following:

1. This is an action arising under or related to a case under Title 11U.S.C; this case was commenced by the filing of a voluntary petition under Chapter 11 of the United States Bankruptcy Code on November 22, 2005.

2. Jurisdiction of the Court is based on 28 U.S.C. §1334.

3. Venue is proper in this District under 28 U.S.C. § 1409 (a).

4. This is a core proceeding as defined by 28 U.S.C. §157(b) (N).

5. The Movant is **Mon View Mining Company**, the Debtor-in-Possession in this Chapter 11 bankruptcy case, and the Debtor has standing and the right to bring this Motion pursuant to 11 U.S.C. §363 and 11 U.S.C. §1107.

6. Among the assets of the estate is the Debtor's interest in real estate in Union Township, Washington County. The debtor owns real estate and mineral rights. The Debtor may own oil & gas rights as to this property. The property consists of approximately 1396 acres, less the 110 acres being sold to Allegheny Energy, LLC. The Property has been described as the Mathies Mine. The Mathies Mine is located in Washington County Pennsylvania; the coal reserves are recoverable from the gob pile, fines and accessible through deep mining. The overall site is approximately 1286 acres +/-. The exact acreage should be determined by any buyer prior to biding.

7. The Debtor is selling the assets of the debtor described above, except for the two parcels made up of 110 acres in Union Township which have been identified in the Motion to Sell those two parcels To Allegheny Energy LLC, filed at document 331. The sales price is a minimum purchase of $ 25,000,000.00. A minimum of $ 4,000,000.00 of the sales price will have to be paid at closing. The Balance will be paid in a manner set out by the Court at the time of sale. The seller shall retain a purchase money mortgage for the unpaid purchase price and a security interest on all the personalty sold. The Buyer will enter into a consent order with the Pennsylvania Department of Environmental Protection prior to closing which will assume all environmental obligations associated with this site and the Buyer will arrange for the release or

replacement of the collateral currently securing the Debtor's permits with the Pennsylvania Department of Environmental Protection prior to closing.

8. This sale is subject to the approval of the Bankruptcy Court.

9. The Debtor will file a separate Motion to determine sale procedures and to determine how buyers will qualify to bid.

10. The sale includes all mineral rights, oil and gas rights that the debtor owns and the surface rights. The debtor makes no warranty of title as to the mineral rights, oil and gas rights that the debtor owns. The sale is subject to all easements, adverse conveyances, recorded leases and rights of way. **The buyers should perform their due diligence and inspections of title prior to bidding.**

11. The sale is in the best interest of all parties since it will help the Debtor to fund and consummate its Plan of Reorganization, which has been filed.

12. **Canestrale Environmental Control Corporation** holds a mortgage on this property and it is being joined to divest that mortgage from this parcel and transfer that lien to the proceeds of sale. Mon View Mining Corporation granted a mortgage to Joseph P. Tessone, Trustee dated June 15, 2000. This mortgage was recorded June 16, 2001 at instrument 200401290. This mortgage was assigned to Canestrale Environmental Control Corporation on December 19, 2003.

13. **Sanderling Incorporated** holds a mortgage on this property and it is being joined to divest that mortgage from this parcel and transfer that lien to the proceeds of sale. The mortgage dated January 9, 2004 was recorded January 9, 2004 at instrument No. 200400385.

14.     **Anixter, Inc.** has a judgment at 6925 of 2002 in the amount of $4,386.01.  The judgment was entered on November 8, 2002.  It is being joined to divest any lien created by the judgment against the property being sold and transfer that lien to the proceeds of sale.

15.     **Commonwealth of Pennsylvania, Department of Environmental Protection** has a judgment against the debtor at 777 of 2005 in the amount of $451,300.60.  The judgment was entered February 7, 2005  It is being joined to divest any lien created by the judgment against the property being sold and transfer that lien to the proceeds of sale.  The Commonwealth of Pennsylvania, Department of Environmental Protection is also being joined because it will play an integral part of the sale process.  The buyer will be requesting a new mining permit on the premises being sold; it will enter into a Consent Agreement and Order regarding the reclamation and water treatment with the buyer; and it will be asked to release the Debtor's bonds posted by the Debtor in connection with the permits the Debtor had with the Commonwealth of Pennsylvania, Department of Environmental Protection when the buyer secures its new bonding in connection with any mining permit.

16.     **Washington County Tax Claim Bureau**, **Washington County, Union Township, Carroll Township, New Eagle, North Strabane Township. Nottingham Township, Union Township and the Ringgold School District** have unpaid real estate taxes on this property and it is being joined to divest those tax liens from this property and pay the undisputed allowed claims, as required by the Debtor's Plan, at closing. .

17.     **The Internal Revenue Service, The Commonwealth of**

**Pennsylvania Department of Revenue and the Department of Labor** has priority claims. They are being joined to divest the tax claims and/or liens filed against these parcels and transfer those claims to the proceeds of sale.

18. **Matthews Leasing, Inc.** has a lease for the rental of space from the debtor. Under the terms of the sale and the Plan, the Buyer will have the right to relocate the tenant or terminate the lease. Matthews Leasing, Inc. is being joined so that the sale is subject to the lease unless Matthews Leasing, Inc. agrees to voluntarily its lease, unless the Debtor has cause to terminate the Matthews Leasing, Inc. lease for breach.

19. **Slane Energy, LLC** entered into a series of agreements, an Oil and Gas Lease and a Surface Coal lease and a Coal Purchase Option on September 28, 2005. Slane Energy, LLC has offices at 261 West Johnstown Road, Columbus, Ohio 43230. Under the option agreement, paragraph § 2, the agreement expired on December 27, 2005 unless Slane Energy, LLC consummated the sale. Prior to the bankruptcy Slane Energy, Inc. determined that it would not proceed with the leases and abandoned them. In the alternative, these contracts were terminated by December 27, 2005 when Slane Energy, LLC did not consummate the sale. They are being joined to determine that the leases have been terminated and that the sale is free and clear of their interest or claims. Their interest was terminated by the prior sale by this court; but they are being joined to ensure free and clear title.

20. The sale is an "As-Is" and "Where-Is" sale.

21. This sale must be a judicial sale, free and clear of all liens and encumbrances, oil and gas leases, rights of way and claims against the Debtor,

Mon View Mining. In order to convey good title, it will be necessary that all these interests, mortgages, claims, oil and gas leases, rights of way and encumbrances be divested as liens against the real property and shifted to the funds to be realized from the sale.

22. The Debtor reserves the right to challenge the validity of any lien or claim at the time of distribution if there are proceeds of sale.

23. This sale is to a "bona fide" purchaser in accordance with the holding of **In re: Abbots Dairies of Pennsylvania, Inc., 788 F.2d 143 C.A.3 (Pa) 1986.**

24. The Debtor will serve all Respondents with a copy of this Motion prior to a hearing on the sale.

25. The Debtor will file a motion for the Court approval of bidding procedures. The terms of Bidding and the sale are:

    a. Any bidder other than the Initial Bidder (a "Prospective Bidder") who desires to be a "Qualified Bidder" (as defined below) must register with Donald R. Calaiaro, Esquire, Calaiaro & Corbett, P.C. 310 Grant Street, Suite 1105, Pittsburgh, Pennsylvania 15219 (e-mail dcalaiaro@calaiarocorbett.com) ("Counsel for the Debtor") no later than five (5) days (including Saturdays, Sundays and any legal holidays) before the Sale Hearing date (the "Bid Deadline") by delivering to Counsel for the Debtor sufficient cash or other equivalent dollars) in immediately available U.S. funds via wire transfer or certified funds (the "Qualifying Deposit").

b.    Only a Prospective Bidder who qualifies as a "Qualified Bidder" will be permitted to bid for the Assets. To constitute a "Qualified Bidder" with a qualified bid for the Assets (a "Qualified Bid"), an individual or entity will be required to (i) deliver the Qualifying Deposit to Counsel for the Debtor no later than the Bid Deadline; (ii) submit a written bid for the Assets to Counsel for the Debtor no later than the Bid Deadline; (iii) provide Counsel for the Debtor no later than the Bid Deadline with evidence of the Prospective Bidder's ability to consummate the purchase of the Assets at closing, as described more particularly below;

c.    If any Qualified Bidder is not the successful bidder or a back-up bidder, its Qualifying Deposit will be refunded within five (5) business days after the confirmation of the sale, provided that such Qualified Bidder is not in breach or violation of the terms of its bid, the Bankruptcy Code provisions, the Bankruptcy Rules or the Bidding Procedures.

d.    If the Qualified Bidder is the successful bidder, its Qualifying Deposit shall become non-refundable once the Court has confirmed its bid as the highest bid. If such successful qualified bidder does not close within the time contained in the Order approving the sale, its Qualifying Deposit will be awarded to the Debtor as liquidated damages.

e. If the Qualified Bidder becomes the back-up bidder, its Qualifying Deposit will be held until the sale closes on or before the time contained in the Order approving the sale;

f. If the Initial Bidder closes the sale in a timely fashion, the back-up bidder's Qualifying Deposit will be refunded within 5 business days after the consummation of the sale provided that such back up bidder is not in breach or violation of the terms of its bid, the Bankruptcy Code provisions, the Bankruptcy Rules or the Bidding Procedures.

g. If the Initial Bidder fails to close the sale in a timely fashion, the back-up bidder will become the next successful bidder and its Qualifying Deposit shall become non-refundable. If such backup bidder does not close within the time contained in the Order approving the sale, its Qualifying Deposit will be awarded to the Debtor as liquidated damages.

h. The proposed Bidding Procedures are as follows:

    i. A minimum bid (the "Overbid") of at least $250,000.00 above the Initial Purchase Bid or, alternatively, a bid structured in a manner that will result in a greater benefit to the estate, taking into account payment of the Break-Up Fee will be required as the first overbid;

    ii. All successive bids must be in increments of not less than $25,000.00;

    iii. All Qualified Bidders must deliver their Qualifying Deposit in the form of a wire transfer, certified check or cashier's check made payable to, and which must be received by, Calaiaro & Corbett Escrow Account no later than the Bid Deadline AND provide the name, address, contact person, telephone number, facsimile number, email

address and other relevant information regarding the owner of the entity or person who intends to bid at the hearing;

  iv. The sale of Assets will be "as is" and "where is". The Debtor/ Seller will not warrant quality of title or warrant condition or amount of coal or whether it has title to oil and gas rights. The Debtor will sell the interests that it has and convey these interests, whatever they may be, to the buyer. Each buyer will have conducted its own "due diligence" and may not rely on any representation or warranties made prior to the sale motion.

  v. The sale of Assets will be free and clear of all liens, encumbrances and interests of all named respondents listed in the Motion to Sell the Assets.

  vi. Any Prospective Bidder desiring to be deemed a Qualified Bidder must deliver evidence (including, but not limited to, financial statements, bank statements, and/or verification of available cash for financing commitment) that such Prospective Bidder has the financial ability to close the transaction, in the event that it/he/she is the successful bidder, without any financing or other contingency, on or before sixty days after the Court approves the sale. The sufficiency of which is to be determined in the Debtor's sole and exclusive discretion, which shall be exercised in consultation with the Committee and subject to approval of the Bankruptcy Court.

  vii. The sale of the Assets will be for all of the assets of the Debtor, except for the particular real estate parcels that Allegheny Energy purchased at Document Number: 331-337;

  viii. No bid for the Assets shall be conditioned on obtaining financing or the outcome of any unperformed due diligence or any other contingency whatsoever;

  ix. No broker fee shall be paid on account of any sale of the Assets except one that has been approved prior to the sale of Assets by the Bankruptcy Court at the request of the Debtor.

  x. The sale may, but need not, be contingent upon the Order of Sale determining that the Assets are free and clear of the interest of the UMWA 1993 Benefit Plan and the UMWA 1974 Pension Trust.

xi. The sale of Assets may, but need not, be contingent upon the Order of sale determining that the successful purchaser is not a "successor" to the debtor and not subject to the collective bargaining agreement with the UMW.

i. For all purposes hereof, the Initial Purchase Bid of New Eagle Energy LLP shall constitute a Qualified Bid, and the Initial Bidder shall be determined to be a Qualified Bidder.

j. The decision as to whether a Prospective Bidder has complied with the Bid Procedures in order to be considered a Qualified Bidder with a Qualified Bid shall rest in the Debtor's sole and exclusive judgment and discretion which will ultimately be made in consultation with the Committee. Within three (3) business days after the Debtor receives from a Prospective Bidder all of the materials required to be deemed a Qualified Bidder with a Qualified Bid, but in no event later than the Sale Hearing Date, the Debtor shall determine, in consultation with its professionals and the Committee, whether the Prospective Bidder is a Qualified Bidder with a Qualified Bid. After such determination is made, but before the Sale Hearing Date, the Debtor will notify the Prospective Bidder of the decision.

k. The first higher bid on the sale of the Assets (the "Overbid") shall be at least $250,000 above the Initial Purchase Bid. Thereafter, all bids shall be in increments of $25,000.00.

l. Under no circumstances will the Initial Bidder be entitled to any Break-Up fee if it is the successful bidder, regardless of the amount of its successful bid for the Assets,

m. A requirement of this sale is that the Buyer will have to enter into a Consent Order and Agreement that deals with the reclamation of the site; deals with future water treatment of water discharged from the mine; and obtain new Mining permits. The Buyer will assume all future reclamation and water treatment obligations as a condition of this sale.

26. A requirement of this sale will be that the Buyer will also have to place appropriate bonding as part of obtaining a mining permit with the Pennsylvania Department of Environmental Protection. The Buyer will have to obtain the release of the bonds currently posted by the Debtor with Pennsylvania Department of Environmental Protection as part of their obligations under the purchase of these assets.

27. The Debtor will have complied with all rules regarding notice and advertising prior to a hearing on the sale.

28. The sale is being conducted in conjunction with a Plan of Reorganization, which has been filed. If the Plan is confirmed prior to the closing of this transaction, the Debtor will use the exemption from state and local transfer taxes afforded by 11 U.S.C. 1146 (c).

**WHEREFORE,** the Movant respectfully requests an Order of Court as follows:

(A) The liens and encumbrances and or claims of all the Respondents and all parties who have claims against the Debtor or the Bankruptcy Estate are divested as to the assets being sold. The Purchaser shall take, pursuant to this sale, free and clear of all rights of any party in interest, liens and encumbrances and claims. The liens and encumbrances and or claims of all the Respondents and all parties who have claims against the

Debtor or the Estate are divested and transferred to the fund created by the sale of these assets.

(B) No transfer stamps or sales taxes will be levied upon this sale if the Plan of Reorganization is confirmed prior to closing.

(C) The Court authorizes the Settlement and transfer of this asset under a sale in order to enable to help Debtor to consummate a Plan.

(D) The Court approves the Settlement and Transfer in accordance with the Motion and purchase agreement term sheet. To the extent there would be any discrepancy between any prior offer and the sale motion and Order, the sale motion and Order approving the sale will control

(E) The settlement officer is authorized to pay the following:

1. All normal and ordinary settlement charges.

2. Any unpaid real estate taxes for the parcels being transferred will be paid at closing;

3. Escrow any balance of the proceeds with Donald R. Calaiaro, Attorney for the Debtor, until further Order of Court.

(F) The Debtor requests this Court to approve the sale to any qualified and highest bid for a minimum purchase price of $ 25,000,000.00 or to any better offer.

(G) The sale is free and clear of any claim of Slane Energy, LLC;

(H) The sale is free and clear of any claim of The United Mine Workers Association; the buyer is not purchasing the assets subject to any collective bargaining agreement. The Buyer is not a successor of the Debtor;

(I) The sale is free and clear of any claim of The United Mine Workers Pension Funds claims arising under the UMWA 1974 Pension trust, the UMWA 1993 Benefit Plan or any collective bargaining agreement. The Buyer is not liable for any pension costs to the UMWA workers unless it enters into a new bargaining agreement with the UMWA.

                                          **Respectfully submitted,**

**DATE:12/08/09**             **BY: /s/ Donald R. Calaiaro**
                                          **Donald R. Calaiaro, Esquire  PA ID #27538**
                                          **Francis E. Corbett, Esquire   PA ID #37594**

                                          **CALAIARO & CORBETT, P.C.**
                                          **Grant Building, Suite 1105**
                                          **310 Grant Street**
                                          **Pittsburgh, PA  15219-2230**
                                          **(412) 232-0930**